GARRETT *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

[No. 16,687. Filed January 21, 1942. Rehearing denied April 15, 1942. Transfer denied May 18, 1942.]

516

*T. Morton McDonald* and *Douglas H. McDonald,* both of Princeton, for appellant.

*Morton C. Embree* and *Gerald E. Hall,* both of Princeton, for appellee.

FLANAGAN, J.—This is an action to recover upon a $5,000 policy of life insurance, in which appellant was named beneficiary, issued by appellee upon the life of appellant's husband.

The trial court found the facts specially, stated its conclusions of law thereon in favor of appellee, overruled appellant's motion for a new trial based upon the grounds that its decision is not sustained by sufficient evidence and is contrary to law, and rendered judgment for appellee. Appellant here asserts that the trial court erred in its conclusions of law and in overruling appellant's motion for a new trial.

On October 12, 1917, appellee executed to one Paul L. Garrett the policy of life insurance in question. He paid all premiums on it to and including the 12th day of October, 1932, but failed to pay the premium due on January 12, 1933. On April 29, 1931, appellee had made a policy loan to the insured in the sum of $892.00.

Upon failure to pay the premium due January 12, 1933, and after the expiration of the thirty-one day

period of grace, the policy was automatically extended on appellee's books as nonparticipating term insurance.

The sole question presented under each assignment of error is whether the term and amount of extended insurance was correctly calculated by appellee.

Clause 11a of the policy provides that the cash surrender value will be "the then reserve on the policy and any dividend additions then existing, less any indebtedness to the company *on account thereof.*" (Our italics.)

Clause 11c provides that upon default in premium payment "the face amount of the policy and any existing dividend additions, less any indebtedness to the company *on account thereof* will be extended automatically as non-participating term insurance for such length of time from the date of such default as the then cash surrender value (as stated in the preceding paragraph numbered 11a) will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent." (Our italics.)

Clause 11g provides that, "Upon request and the sole security of this policy properly assigned, the company, unless extended term insurance be in force, will advance at the rate of interest not exceeding six percent per annum an amount which with the interest, and any unpaid premium or premiums, for the then current policy year shall equal, or at the option of the insured be less than, the cash surrender value of the policy and of any existing dividend additions at the end of such year. Failure to pay either loan or interest shall not avoid the policy unless the total indebtedness to the company *on account thereof* shall equal or exceed the cash surrender value of the policy, etc." (Our italics.)

The policy loan in question was made pursuant to the provisions of clause 11g. On January 12, 1933, the

loan with interest to that date amounted to $983.08. The total reserve under the policy on that date determined in accordance with the American Experience Table of Mortality with interest at 3% was $1,025.00.

In calculating the amount and term of extended insurance, appellee first deducted the indebtedness of $983.08 from the reserve leaving $42.52 available to purchase extended insurance. Next, pursuant to clause 11c it deducted the amount of indebtedness from the face of the policy leaving $4,016.92 as the amount of extended insurance to be purchased. The sum of $42.52 purchases extended nonparticipating term insurance in the sum of $4,016.92 for 342 days or from January 12, 1933, to December 20, 1933. Paul L. Garrett died July 25, 1934.

Appellant first contends that appellee should not have deducted the indebtedness of $983.08 from either the face of the policy or the amount of the reserve because it was not an indebtedness to the company "on account of" the policy.

Under chapter 95 of the Acts of 1909, § 4622a, Burns' R. S. 1914, in force at the time of the issuance of the here involved policy, an insurance company was permitted to contract for the reduction of the amount or term of extended insurance by deducting any existing indebtedness to the company "on account of" or "secured by" the policy. Appellant contends that in the policy before us the company chose to include only the provision to deduct indebtedness "on account of" the policy, thereby foregoing its right to contract for reduction by reason of an indebtedness "secured by" the policy; and that the loan in question is "secured by" and not "on account of" the policy.

We cannot agree with this contention. It is true that the loan in question is "secured by" the policy. But

it is also "on account of" the policy. The intent is clear and we see no ambiguity calling for construction. "On account of the policy" here plainly means, "on account of the terms of the policy," or "by reason of the terms of the policy."

When the insured made application for his loan, he was entitled to have his application granted *as a matter of right* because of the terms of clause 11g of the policy. "On account of" the terms of the policy the loan had to be made. The fact that it was "secured by" the policy did not change the fact that it was made "by reason of" or "on account of" the policy's provisions.

That the words "on account of" were used in the policy in the sense of "by reason of" is demonstrated by the use of the phrase "on account thereof" in the same clause (11g) wherein the right to a loan is provided. The statement is that failure to pay the loan "shall not avoid the policy unless the total indebtedness to the company *on account thereof* shall equal or exceed the cash surrender value of the policy."

It is true that the same words may be used in a different sense in different parts of the same instrument, but surely there is no logic in interpreting their meaning differently unless some reason therefor is disclosed in the different contexts or in the different purposes sought to be accomplished. In each clause, 11a, 11c and 11g, the clause "on account thereof" is used in connection with a deduction from the cash surrender value.

If it were intended that the only secured remedy of the insurer upon failure to pay the loan be a deduction of its amount from the face of the policy when that became due upon death of the insured, why provide that failure to pay should not avoid the policy "unless the total indebtedness to the company on account thereof

shall equal or exceed the cash surrender value of the policy." It seems clear that the company agreed to loan the cash reserve; and the cash reserve having been loaned, it could not be used upon default of premium to buy extended insurance.

Well has it been said by our Supreme Court:

> "Whether we are considering an agreement between the parties, a statute, a constitution, a judgment or order of court, with a view of its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is the natural significance of the words employed, in the order of the grammatical arrangement in which the framers of the writing have placed them. If then regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the writing, is the one which alone we are at liberty to say was the one intended to be conveyed. In such a case there is no room for construction. That which the words declare as the meaning of the writing is the true one, and neither courts or Legislatures have a right to add to or take from that meaning."

*Blythe, Receiver* v. *Gibbons* (1894), 141 Ind. 332, 344, 35 N. E. 557.

Appellant calls attention to the fact that the trial court did not find specifically that the loan was "on account of" the policy. The primary facts as found necessitate the inference of the ultimate fact that the loan was made "on account of" the policy. Such ultimate fact will therefore be treated as found. *Bryant* v. *Barger* (1938), 106 Ind. App. 245, 18 N. E. (2d) 965.

Appellant next contends that appellee improperly deducted interest on the loan from May 13, 1932, to

January 12, 1933, amounting to $37.56 which was not yet due; that this amount would purchase extended insurance of $4,016.92 for a further period of 303 days, or to October 19, 1934, thus putting it in force at the time of the death of the insured.

Appellant refers us to § 7 of chapter 95, Acts 1909, § 4622c, Burns' R. S. 1914, which was in force at the time the policy was written, which section reads as follows:

"In ascertaining the *indebtedness due* upon policy loans the interest, if not paid when due, shall be added to the principal of such loans, and shall bear interest at the rate specified in the note or loan agreement." (Our italics.)

But this section refers to calculation of indebtedness *due*. Both the section of the same act (Section 5, Subsection 10) and the provisions of the policy (clause 11g) which refer to the amount to be used for extended insurance provide that it is to be calculated by deducting the *"existing indebtedness."* Neither require that it shall be *due*. We think the clear intent is that interest on any loan shall be determined to the date of the default and a complete balance of accounts on account of the policy be made in finding the amount available to purchase extended insurance.

Finally appellant contends that the provision of the policy permitting the use of the indebtedness to reduce both the term and amount of the extended insurance is void because it is prohibited by § 5 of chapter 95 of the Acts of 1909.

This same question was presented to our Supreme Court in the case of *Gallagher, Admr.* v. *Mutual Life Ins. Co.* (1941), 219 Ind. 35, 36 N. E. (2d) 780. In that case the court held that in this regard a provision

in a policy which safeguards the policyholder as carefully as do the laws of this State is valid.

In the instant case, if the indebtedness is used to reduce the amount only, the extended insurance would be in the amount of $208.00 for a period of 16 years and 191 days. If the indebtedness is used to reduce the term only, the amount would be $5,000 and the term 250 days. Under the policy provision the amount is $4,017 and the term 342 days. It seems apparent that the provision of the policy safeguards the policyholder as carefully as do the laws of this State and is therefore valid.

Judgment affirmed.

NOTE.—Reported in 38 N. E. (2d) 874.