423 F.2d 818
 7 UCC Rep.Serv. 446
 UNITED STATES of America for the Use of Lawrence GAUNT and
Lina K. Gaunt d/b/a Gaunt and Son, Wabash,
Indiana, Plaintiffs-Appellees,
v.
CARL M. GEUPAL CONSTRUCTION CO., The Western Casualty &
Surety Co., The Western Fire Insurance Co., The
American Casualty Company, Defendants-Appellants.
 No. 17490.
 United States Court of Appeals, Seventh Circuit.
 March 16, 1970, Rehearing Denied April 7, 1970.
 
 R. Stanley Lawton, Indianapolis, Ind., Edward N. Kalamaros, South Bend, Ind., Ice Miller Donadio & Ryan, G. Daniel Kelley, Jr., Indianapolis, attorneys for defendants-appellants.
 Donald R. Metz, Plummer Tiede Magley & Metz, Wabash, Ind., for appellees.
 Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit judges.
 KNOCH, Senior Circuit Judge.
 
 
 1
 Defendant-appellant Carl M. Geupel Construction Company contracted with the United States of America to construct a dam at the Huntington Reservoir outside Huntington, Indiana. Certain types of gravel were to be used in the construction. Geupel was to be paid per cubic yard on the quantity to be determined as the material was in place at the dam site.
 
 
 2
 Geupel then contracted with plaintiffs-appellees Lawrence and Lina K. Gaunt doing business as Gaunt and Son to furnish material
 
 
 3
 Pertaining to construction of Dam, Huntington Reservoir, Wabash River, Indiana. Contract DA-15-029-CIVENG-65-162.
 
 
 4
 Furnish and deliver the following material as directed by our job superintendent, F.O.B. jobsite in trucks:
 
 Item #45-- Subbase Type II $1.35/cy
 
 5
 Item #14-- Horizontal and Inclined Drain Material $1.90/cy
 
 
 6
 All material to be in accordance with the applicable provisions of Sections 30 and 6 respectively of the Contract Specifications, including Amendments 1 thru 8.
 
 
 7
 The purchase order also provided: 'Shipping instructions: Deliver to jobsite in trucks.'
 
 
 8
 After partial delivery of the first type of material a dispute arose respecting the method for determining the number of cubic yards of material delivered. Geupel admitted liability only for material as determined by the U.S.Corps of Engineers on the basis of computations of the amount in place at the dam site. Gaunt sought payment on the amount of gravel as delivered loose in the trucks, which would measure a greater number of cubic yards than when compacted in the dam and would include materials used in work which might ultimately be rejected by the government and for which Geupel would therefore recover no payment.
 
 
 9
 Gaunt refused to continue performance and pursuant to the Miller Act 40 U.S.C. 270a et seq. brought suit in the U.S. District Court against Geupel, and its sureties, alleging delivery of 54,024 1/2 cubic yards of materials on which about $14,135.00 was still due and owing.
 
 
 10
 In their answer defendants-appellants alleged that only 32,541 cubic yards had been supplied on the basis of in-place measurement and counterclaimed for wrongful refusal to continue deliveries.
 
 
 11
 After briefing the question whether the contractual documents were ambiguous on the method of measurement (and the Trial Judge having ruled (1) they were not ambiguous and (2) they supported Gaunt's view) the parties entered into a stipulation agreeing that the court consider the stipulation a motion for summary judgment by Gaunt for $13,435.00 on the theory the contractual documents unambiguously required measurement of the material as delivered loose in the trucks. The parties stipulated the amount of the damages. They further stipulated that the trial court consider the stipulation a motion for partial summary judgment by Geupel that the contractual documents unambiguously required measurement of the material in place through cross section measurements, leaving the issue of damages for trial.
 
 
 12
 It was further agreed that if the contractual documents were ambiguous then both parties would be entitled to introduce evidence relevant to resolving the ambiguity.
 
 
 13
 The District Judge adopted the stipulation as a finding of fact. He concluded that the contract between the parties was contained in the Purchase Order of June 30, 1965, (the vital portions of which are quoted above) together with 30 and 6 of the contract specifications to which the Purchase Order refers.
 
 
 14
 He found the contract unambiguous. So do we. He concluded that it required Geupel to pay Gaunt for materials measured by the cubic yard in trucks at the jobsite and that Geupel's refusal to pay except on the basis of cross-section measurements in place in the dam constituted an anticipatory breach and repudiation of the contract which excused Gaunt from further performance. He denied Gaunt attorneys' fees as prayed in the Complaint.
 
 
 15
 It is Geupel's position that the terms 'F.O.B. jobsite in trucks' were delivery terms only and had no reference to measurement and payment as indicated by their repeated use in the Purchase Order, and use of 'F.O.B.' as a delivery term under the Uniform Commercial Code, whereas Specifications 30 and 6 incorporated by reference clearly provide for in-place measurement.
 
 
 16
 Geupel cites Garrett v. Northwestern Mut. Life Ins. Co., 1942, 111 Ind.App. 515, 520, 38 N.E.2d 874, 876, for the proposition that the same words may be used in a different sense in different parts of the same instrument but that there is no logic in interpreting their meaning differently unless some reason is disclosed in the context or in the different purposes sought to be accomplished. Here both conditions occur. The words 'Deliver to jobsite in trucks' appear first under the printed heading: 'Shipping Instructions'. Then after a printed heading: 'Please ship the following material in accordance with terms and directions above' we find in typed form the terms previously quoted where the words 'F.O.B. jobsite in trucks:' are immediately followed by designation of the materials and their prices per cubic yard.
 
 
 17
 If, on the other hand, measurement for payment is to be found only in the contract between Geupel and the United States then we do see an ambiguity in the Purchase Order which calls for furnishing the material as directed by the job superintendent. 'F.O.B. jobsite in trucks' at the stated prices per cubic yard. If 'F.O.B. jobsite trucks' is solely a delivery term, it is not only redundant because, as indicated, at the top of the Order under the heading 'Shipping Instructions:' we have already been told that Gaunt is to 'Deliver to jobsite in trucks' and midway in the Order, that material is to be shipped in accordance with those terms and directions, but it is also ambiguous.
 
 
 18
 The reference to the government contract reads:
 
 
 19
 All material to be in accordance with the applicable provisions of Sections 30 and 6 respectively of the Contract Specifications * * *'
 
 
 20
 with no mention of payment. Certain provisions of Specifications 30 and 6 are headed 'Materials' and set out standards of quality.
 
 
 21
 Construing the Purchase Order as providing for payment for material as delivered 'F.O.B. jobsite in trucks' at the prices listed and as calling for materials to meet the standards set out in the applicable provisions of Sections 30 and 6 harmonizes all provisions of the Purchase Order without conflict. Barbasol Co. v. Leggett, 1939, 106 Ind.App. 290, 296, 19 N.E.2d 481, 483-484; Prudential Ins. Co. v. Citizens T. & S. Bk., Gdn., 1935, 101 Ind.App. 168, 173, 198 N,E. 116, 118.
 
 
 22
 Although the Purchase Order is written on a printed form of Geupel's, the principle that it may properly be construed most strictly against the party who prepared it and thus ambiguities, if any exist, be resolved in favor of Gaunt, Fineberg v. Clark, 1965, 137 Ind.App. 528, 209 N.E.2d 528, 534, rehrg. den. 210 N.E.2d 260, does not apply as, like the District Judge, we see no ambiguity here.
 
 
 23
 The interpretation is reasonable. It would be unusual, for example, for Gaunt to have agreed, as Geupel in effect contends, to waive payment for materials which met the quality standards of the government contract when delivered but which were later rendered unacceptable by the matter of their placement in the embankment through operations over which Gaunt had no control.
 
 
 24
 Gaunt argues persuasively that the interpretation for which Geupel contends would in effect impose risk of loss of materials on Gaunt after delivery until final cross-sections were made contrary to the Uniform Commercial Code in effect in Indiana on the date of the Purchase Order, Sec. 19-2-319(b) of which provides that when the term of delivery used is F.O.B. a place of destination, the seller at his own expense and risk must transport the goods to that place and there tender delivery, with title passing on such tender at the destination (19-2-401(2)(b)) risk of loss passing to the buyer on tender or delivery (19-2-509(3)) with the goods deemed to be accepted, lacking effective rejection (19-2-606).
 
 
 25
 There is no possible ambiguity about the unit of measure. A cubic yard is an accepted term of measurement meaning twenty-seven cubic feet. Corcoran v. Chess, 1890, 131 Pa. 356, 18 A. 876, 877.
 
 
 26
 The Purchase Order clearly indicates that the materials are to be measured by the cubic yard in the trucks at the jobsite.
 
 
 27
 The cases on which defendant relies are distinguished on facts. For example, in Ward v. Smith, 1955, 140 W.Va. 791, 86 S.E.2d 539, the subcontract provided no method of measurement but merely incorporated the contract specifications which provided (86 S.E.2d 542) that 'The quantity of work done under this item shall be measured in cubic yards of material used, measured in vehicles at the point of delivery.' The plaintiff had no record based on any truck load count of the material delivered, but he accused the defendant of fraud in the count maintained at the defendant's office. It was held error to permit the subcontractor plaintiff, over objection, to adduce evidence of the amount of stone removed from the quarry and the cubic feet of crushed stone producible therefrom, as none of the contract documents provided for any such form of measurement.
 
 
 28
 With respect to Edelblut Construction Co. v. Free, Fla.App., 1963, 149 So.2d 360, which defendant sees as on 'all fours' with this case, there was a dispute on how much of the delivered material was to be measured. The general contract to lay pavement for the City of Vero Beach had a provision that the 'limiting width to be used in the computation shall be three feet (3')' (149 So.2d 362). The subcontracts between Edelblut and Free, and between Free and its subcontractors, recited that portions of the prime contract were being subcontracted 'under the terms and conditions submitted in said (prime) contract' and that the work would be done 'in accordance with the specifications in the (prime) contract.' The subcontractors were not merely providing material which had to meet certain specifications, but were actually performing the work to be done according to the plans and specifications. This differed from the situation here where incorporation by reference was limited to 'material' which was to be in accord with 'applicable' provisions. Further, under their subcontracts in Edelblut, the subcontractors Hardrives and Free were provided with certain protections in the event they were required to replace pavement of greater width than three feet. The Court held that these provisions would be meaningless unless the subcontractors were to be paid according to the prime contract's specified three feet width limitation in the first instance.
 
 
 29
 We have carefully considered all other points and authorities to which our attention has been drawn. We are satisfied, nevertheless, that the judgment of the District Court must be affirmed.
 
 
 30
 Affirmed.