FILED

08/22/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0032

DA 17-0032

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 208

MARK MOORE,

        Plaintiff and Appellee,

    v.

GORAN, LLC and JOHN DOES 1-5,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV-16-27
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            W. Scott Mitchell, Brianne C. McClafferty, Holland & Hart LLP,
            Billings, Montana

        For Appellee:

            James R. Halverson, John L. Wright, Halverson, Mahlen & Wright, P.C.,
            Billings, Montana

Submitted on Briefs:  June 28, 2017

Decided:  August 22, 2017

Filed:

_____
                  Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This appeal comes from the District Court's grant of a summary judgment motion in favor of Mark Moore.

¶2     We restate the issue on appeal as follows:

*Did the District Court err when it granted summary judgment to Moore?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Mark Moore (Moore) is the owner of the Moore gravel pit (Moore Pit) north of Red Lodge, Montana.   Goran, LLC (Goran) is a Utah Limited Liability Company contracted by the Montana Department of Transportation (MDT) to build the Red Lodge Tied Projects.   Moore and Goran entered into a contract (Contract) in which Moore agreed to provide Goran crushed aggregate material.  Goran's form contract was used.

¶4     Moore loaded crushed aggregate onto Goran's trucks at the Moore Pit, where it was weighed and the driver of Goran's truck would sign for and receive a weight ticket. Each week Moore would send an invoice to Goran for the crushed aggregate, measured by the ton at the Moore Pit; Goran paid the invoices.  Once Goran had removed all of the materials from the Moore Pit it needed, Goran refused to pay the final invoices.  Moore sued for breach of contract, violation of the Montana Prompt Payment Act, and unjust enrichment.  Goran filed a counterclaim for breach of contract, breach of duty of good faith and fair dealing, and unjust enrichment.

¶5     In the District Court, Goran argued it overpaid Moore for the materials it took from the Moore Pit.  Moore disagreed, arguing that Goran clearly took material from the

Moore Pit and then refused to pay. Goran argued the Contract did not specify how the parties would measure the amount of material taken from the Moore Pit and that the materials should be measured by volume by MDT at the Red Lodge Tied Projects.[1] Moore argues the Contract requires measurement of the material by weight and that the only evidence of the material Goran took possession of was the measurements in tons at the Moore Pit scales.

¶6 Moore moved for summary judgment, arguing that the Contract unambiguously required Goran to base payment on the tonnage of crushed aggregate weighed by Moore's scales. The District Court agreed with Moore and granted his motion. The District Court determined Goran breached the Contract by refusing to pay for the crushed aggregate material. The District Court determined that Goran was unjustly enriched and owes Moore $66,269.95[2] for the crushed aggregate it removed, as measured by the Moore Pit scale. The District Court granted attorney's fees to Moore, as the prevailing party. Goran appeals.

## STANDARD OF REVIEW

¶7 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. The construction and interpretation of a written agreement are questions of law that we review for

---

[1] Goran asserts MDT measured the crushed aggregate material in cubic yards at the Red Lodge Tied Projects daily.

[2] Moore asserts Goran owes a total of $188,486.82, has paid $122,216.87, and $66,269.95 is the amount still owed.

correctness.  *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192; *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851.  If the Supreme Court reaches the same conclusion as the District Court, but on different grounds, it may affirm the district court's judgment. *Johnson Farms, Inc. v. Halland*, 2012 MT 215, ¶ 11, 366 Mont. 299, 291 P.3d 1096.

## DISCUSSION

¶8  *Did the District Court err when it granted summary judgment to Moore?*

¶9  Goran argues the District Court erred when it granted summary judgment to Moore; the District Court was presented with conflicting evidence regarding the amount of crushed aggregate removed from the Moore Pit, which created an issue of material fact.  Goran asserts the District Court resolved this issue of material fact by improperly interpreting the Contract.  Specifically, Goran asserts the District Court ignored the payment terms of Paragraph 3 and created its own definition of the term "project," in the Contract.

¶10  The District Court determined that, based on the language of the Contract that "delivery to the project" occurred when the crushed aggregate was loaded onto Goran's trucks at the Moore Pit.  Goran argues the District Court's interpretation of the Contract language "delivered to the project" was incorrect.

¶11  A contract is to be taken together, as a whole, to give effect to every part if reasonably practicable, each clause helping to interpret the other.  Section 28-3-202, MCA.  When interpreting a written contract, the court should determine the intention of the parties from the writing alone if possible.  Section 28-3-303, MCA.  A court's duty is

4

to enforce contracts as they are written, not to make new ones for the parties. *Hein v. Fox*, 126 Mont. 514, 521, 254 P.2d 1076, 1080 (1953). The interpretation of a contract is a question of law. *Ophus*, ¶ 19.

¶12 Initially we note that while Goran asserts MDT measurement by volume can be used to determine the amount of material removed from the pit, the Contract clearly indicates that the crushed aggregate material was to be bought and sold by the ton. As such, the MDT measurements by volume were not contemplated in the Contract between Moore and Goran. The only measurement available to the parties of the crushed aggregate in tons was the Moore Pit scales. The Contract requires the material to be weighed at the Moore Pit scales by the ton and the parties practice was for Goran to be invoiced based on those weights.

¶13 Goran argues that based on the Contract it owes Moore for material actually delivered to the project, that the term project was defined in the Contract as the "RED LODGE TIED PROJECTS," and therefore delivery could take place nowhere else.

¶14 However, Goran inserts language into the Contract by giving "project" a different meaning that the one actually used in the Contract. The contract specifically defines "project" within the general terms section. It is defined as "the construction project for which GORAN is arranging with SUPPLIER to purchase goods and/or services hereunder." As defined in the contract the term is not used to denote a particular location, but rather refers to the construction project as a whole—the purpose of the contract.

¶15 For our purposes here, the pertinent part of the Contract states "[V]endor agrees to furnish F.O.B. Moore Pit an estimated quantity of all material as listed below. . . ." Moore Pit is the location where delivery to the project occurred.

¶16 Montana has adopted the Uniform Commercial Code (UCC) and it is codified in Montana statute. Section 30-1-102, MCA, *et seq*. The UCC is designed to simplify, clarify, and modernize the law governing commercial transactions. Section 30-1-102(1)(a), MCA.

¶17 Montana's Uniform Commercial Code controls agreements to sell goods. Section 30-2-102, MCA; *Webcor Elecs. v. Home Elecs.*, 231 Mont. 377, 383, 754 P.2d 491, 494 (1988). Section 30-2-105, MCA, defines "goods" to mean all things movable at the time of the contract for sale. *Rothing v. Kallestad*, 2007 MT 109, ¶ 27, 337 Mont. 193, 159 P.3d 222. Crushed aggregate is a good as it was movable at the time of the contract. The UCC controls the interpretation of this Contract.

¶18 Under the UCC it is the obligation of the seller to transfer and deliver, and that of the buyer to accept and pay, in accordance with the contract. Section 30-2-301, MCA. Here, the Contract stated that Moore would "[F]urnish F.O.B. Moore Pit an estimated quantity of materials. . . ." The F.O.B. language is a term of art under the UCC and means "free on board." Section 30-2-319, MCA; *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1358 n.1 (Fed. Cir. 2008); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578 n.2 (Fed. Cir. 1994). F.O.B. is followed by a location, usually the place of shipment (where the goods are shipped from) or a place of destination (where the buyer takes possession of the goods). Section 30-2-319, MCA. Contracting parties use

F.O.B. terms to designate where delivery would take place and where risk of loss would transfer from seller to buyer. *Litecubes*, 523 F.3d at 1358 n.1 (Fed. Cir. 2008); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1374 n.3 (Fed. Cir. 2005); § 30-2-509, MCA.

¶19     If the language following F.O.B. is the place of shipment, the seller must move the goods at its expense and maintain control of and the risk of loss of the goods until the seller places the goods with a carrier. Section 30-2-319(1)(a), MCA, provides "[W]hen the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this chapter (30-2-504) and bear the expense and risk of putting them into the possession of the carrier." The risk of loss will transfer from seller to buyer when the seller places the goods in the hands of a carrier. Section 30-2-509, MCA; *United States use of Gaunt v. Carl M. Geupal Constr. Co.*, 423 F.2d 818, 820 (7th Cir. 1970) (interpreting the Indiana UCC statute identical to Montana's UCC statute). In a shipment contract, title passes to the buyer at the time and place of shipment. Section 30-2-401(2), MCA. Title passes to the buyer at the time and place at which the seller completes performance with reference to the delivery of the goods. Section 30-2-401(2), MCA.

¶20     In the instant case, the Contract required Moore to deliver the goods "F.O.B. Moore Pit." The F.O.B. term creates a shipment contract, as the language following F.O.B. is Moore Pit, the location from where Moore would ship the goods. In this F.O.B. place of shipment contract, the risk of loss, injury, or destruction of the crushed aggregate would be borne by Moore until the crushed aggregate material had been loaded for

7

shipment. Possession, title, and risk of loss passed to Goran at the Moore Pit when Moore delivered the crushed aggregate directly to Goran. This Contract provides that delivery to the project occurred at the Moore Pit.

¶21 The Moore Pit scale is the only location where the material could have been measured per the Contract. Goran argues that the MDT measurements taken at the Red Lodge Tied Projects should be used to determine the amount of material it obtained. This interpretation would in effect impose risk of loss of material on Moore after delivery took place and potentially not until the Red Lodge Tied Projects were completed. This interpretation is contrary to the UCC as noted above. Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the delivery of the goods. Section 30-2-401(2), MCA.

¶22 The Contract required Moore to deliver the crushed aggregate to Goran at the Moore Pit. Title and risk of loss transferred at the Moore Pit, when Goran took possession. The contract required material to be sold by the ton and payment would be based on the measurements taken at the pit.

¶23 On appeal, Goran contends that the amount of material it received from Moore was in dispute, thus creating a genuine issue of material fact; therefore summary judgment was inappropriate. The District Court determined both that the amount of material was not in dispute and that Goran had failed to submit admissible evidence disputing the amount of material actually removed.

¶24 After a thorough review of the pleadings and record as well as the arguments made on appeal, we conclude Goran failed to provide the trial court with substantial evidence

8

indicating there was a discrepancy in the amount of materials it took from the Moore Pit. Evidence sufficient to raise a genuine issue of material fact "must be in proper form and conclusions of law will not suffice; the proffered evidence must be material and of a substantial nature, not fanciful, frivolous, gauzy or merely suspicious." *Elk v. Healthy Mothers, Healthy Babies, Inc.*, 2003 MT 167, ¶ 16, 316 Mont. 320, 73 P.3d 795. Goran cites *Mary J. Baker Revoc. Trust*, ¶ 17, noting that it is entitled to all reasonable inferences which may be drawn from its offered proof in defeating summary judgment. While we agree with the cited rule, the fact is that Goran has simply failed to offer proof of a material factual dispute that would support an inference in its favor.

¶25 The evidence provided by Goran is the affidavit of Todd Cusick and MDT measurement documents. The documents purporting to be MDT measurements were never authenticated. The documents seem to be pages taken at random from a larger document. The affiant, Cusick, does not have, and doesn't purport to have, direct personal knowledge of the measurements taken by MDT.

¶26 Under M. R. Civ. P. 56(e)(2), the party opposing a motion for summary judgment cannot rely on speculation or conclusory statements. *Baumgart v. State*, 2014 MT 194, ¶ 14, 376 Mont. 1, 332 P.3d 225. For any document to be considered with an affidavit, the exhibits must have proper foundation laid by an affiant with personal knowledge of the document's authenticity and genuineness as well as the basis for hearsay exclusion. *Alfson v. Allstate Property and Cas. Ins. Co.,* 2013 MT 326, ¶ 13, 372 Mont. 363, 313 P.3d 107. Unauthenticated documents cannot be considered on a motion for summary judgment. *Alfson*, ¶ 13.

¶27 Goran has failed to present sufficient admissible evidence to establish a genuine issue of material fact. The District Court properly granted summary judgment to Moore.

## CONCLUSION

¶28 The Contract designated that the material was to be sold by weight, in this case tons. The Moore Pit scales were the only place to weigh the material by the ton. Moore would base Goran's invoices on that measurement. Further, the Contract specified that the vendor agreed to furnish the material to Goran F.O.B. Moore Pit and thus the point of delivery was, and the title as well as the risk of loss were transferred at, the Moore Pit. The District Court properly granted summary judgment to Moore as Goran failed to present sufficient evidence to establish that an issue of material fact existed regarding the amount of material Goran removed from the Moore Pit. Moore is entitled to reasonable attorney's fees and costs for both trial and appeal in this case under § 28-2-2105, MCA. We remand to the District Court for determination of fees and costs.

¶29 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ MICHAEL E WHEAT

10