FILED

11/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0095

DA 17-0095

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 291

IN RE THE MARRIAGE OF:

DANIEL E. ORR,

        Petitioner and Appellant,

    v.

MELINDA J. ORR,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 13-426
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jamie J. McKittrick, Thomas H. Stanton, Wells & McKittrick, P.C.;
Missoula, Montana

        For Appellee:

            Raymond P. Tipp, Tipp Coburn Schandelson, P.C.; Missoula, Montana

                    Submitted on Briefs:  October 11, 2017

                            Decided:  November 28, 2017

Filed:

                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Daniel E. Orr (Daniel) appeals the order denying his motion to modify maintenance, entered in the Fourth Judicial District, Missoula County. We affirm, and address the following issue:

*Did the District Court err when it determined that maintenance, incorporated into the decree from the marital property settlement agreement, was not modifiable by the court?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Daniel and Melinda Orr, k/n/a Melinda Koffler, (Melinda) were married in 1985 and have three adult children. Daniel filed a petition for dissolution of marriage in July 2013. Both parties were represented by counsel and engaged in lengthy negotiations that ultimately resulted in a Marital and Property Settlement Agreement (the Agreement) on May 16, 2014, in which the parties consented to entry of a Decree of Legal Separation. The District Court entered a Final Decree of Legal Separation the same day, incorporating the Agreement and, although the record before us does not include the transcript of the hearing, the Decree states the District Court found the Agreement was reasonable, equitable, and not unconscionable.

¶3 The Agreement divided assets and debts between the parties. Section 11 addressed maintenance, and section 13 distributed property, including the couple's business, Iron Orr Welding, Inc. (the business).[1] The Agreement provided that if the matter remained a legal

---

[1] Daniel's motion to modify maintenance attributed the $170,841 in adjusted gross income on the parties' 2013 federal income tax return to their welding business.

2

separation, Melinda was entitled to 30% monthly distributions from the business, but would receive no maintenance. However, if the matter was converted into a marriage dissolution, then Melinda would relinquish her interest in the business and Daniel would pay Melinda $3,000 per month in maintenance for a period of three and one-half years. Section 21 stated as follows, including a provision regarding modification:

> 21. **ENTIRE AGREEMENT:** This Agreement contains the entire agreement of the parties. There are no representations, warranties, covenants, or any other undertakings of any sort of nature other than those expressly set forth or discussed herein. Time is of the essence of the terms and condition of this Agreement. *This Agreement may not be amended or modified except by an agreement in writing, duly subscribed and acknowledged with the same formality that has been employed in the execution of this Agreement.*

(Underline and bold in original, emphasis added.)

¶4 On November 19, 2014, on Daniel's motion, the District Court converted the Decree of Legal Separation to a Decree of Dissolution of Marriage, triggering Melinda's relinquishment of her interest in the business and Daniel's obligation to pay her $3,000 monthly maintenance payments, beginning December 2014. At that time, Daniel was operating the business in the Bakken oil fields in North Dakota, and he made maintenance payments to Melinda for six months, totaling $18,000. However, when the oil market declined, Daniel was unable to find work in North Dakota, and he moved back to Montana. He then began employment in a non-welding position, earning about $3,000 per month in take-home pay.

¶5 Citing a change in circumstances, Daniel moved the court to modify the maintenance provision in the Agreement in March 2016, asking that he be completely

3

relieved of any maintenance obligation. The matter was assigned to a Standing Master, who conducted a hearing. Melinda testified that she agreed to relinquish her share in the business, which she had helped to build, only because of the maintenance provision. She testified she was paying off significant debts assigned to her under the Agreement, and without the maintenance money, she would have to file for bankruptcy. For his part, Daniel testified that "I had to make this deal in order for [Melinda] to sign the divorce and [I] kept telling everybody that the oil field was not going to last." Daniel testified he had almost no assets and no retirement savings, and he was living in a fifth-wheel trailer for which he was making payments. Daniel also testified his welding business was now in poor financial condition, and believed he was earning more in his non-welding job than he would earn if he returned to welding.

¶6 The Standing Master reduced the maintenance, citing her equitable powers, ordering Daniel to pay $500 a month for 24 months. The Standing Master also ordered Daniel to sell a broken-down race car he owned for a minimum of $4,000, and pay Melinda the proceeds. These provisions would have relieved Daniel of approximately $96,000 he still owed to Melinda in maintenance under the Agreement.

¶7 Melinda objected, requesting review of the Standing Master's decision by the District Court. The District Court first reasoned that the Agreement is a contract, which must, under § 28-3-401, MCA, be construed according to its "clear and explicit language," and concluded "[w]hile the [non-modification] provision is in fact one sentence out of a larger paragraph, it is still quite 'clear and explicit' that the [Agreement] cannot be

4

modified absent a written agreement of the parties." The District Court also reasoned that § 40-4-201(6), MCA, and Montana case law, precludes a District Court from modifying maintenance when an agreement prohibits modification. Daniel appeals.

## STANDARD OF REVIEW

¶8 The construction and interpretation of a written agreement are questions of law that we review for correctness. *Moore v. Goran, LLC*, 2017 MT 208, ¶ 7, 388 Mont. 340, 400 P.3d 729 (citations omitted).

## DISCUSSION

¶9 *Did the District Court err when it determined that maintenance, incorporated into the decree from the marital property settlement agreement, was not modifiable by the court?*

¶10 We affirm the District Court's holding, but on an alternate basis. Regarding modification of maintenance, Daniel argues the District Court erred as a matter of law because the non-modification language in the clause titled "Entire Agreement" does not preclude judicial modification of maintenance. Referencing various authorities, Daniel offers that the purpose of an "entire agreement" or "merger" clause is to "avoid litigation over the questions of whether there were oral representations made outside the written agreement . . . ." (quoting 17A Am. Jur. 2d *Contracts* § 378 (2008)). Daniel thus argues that non-modification language contained in a merger clause is merely intended to prevent extrinsic evidence from being used to modify the terms of the Agreement, and does not operate to foreclose judicial modification of maintenance on the ground of changed circumstances. Melinda responds that the District Court correctly applied the law, and that

the plain language of the Agreement prevents modification, regardless of where the language was placed in the Agreement, a principle consistently upheld by this Court.

¶11    The Legislature has addressed judicial modification of maintenance provisions. Section 40-4-208, MCA, provides:

> (1) *Except as otherwise provided in 40-4-201(6), a decree may be modified by a court as to maintenance* or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification.
>
> .   .   .
>
> (2) (b) [W]henever the decree proposed for modification contains provisions relating to maintenance or support, *modification under subsection (1) may only be made:*
>
> (i)    upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable. . . .

(Emphasis added.)  However, this provision cross-references § 40-4-201(6), MCA, which provides an exception allowing decrees of dissolution to preclude or limit future modification upon the parties' agreement:

> [E]xcept for terms concerning the support, parenting, or parental contact with the children, *the decree may expressly preclude or limit modification of terms set forth in the decree if provided for in the separation agreement.* Otherwise, terms of a separation agreement set forth in the decree are automatically modified by modification of the decree.

(Emphasis added.)   Consequently, we have held that "where a separation agreement expressly precludes modification or limitation of maintenance, a District Court is barred from later modifying the terms of the agreement." *In re Marriage of Bolstad*, 203 Mont. 131, 135, 660 P.2d 95, 97 (1983); *see also Rowen v. Rowen*, 199 Mont. 315, 320, 649 P.2d 1259, 1262 (1982) (when a separation agreement does not expressly limit modification, the

6

district court has the power to modify maintenance); *In re Marriage of Johnson*, 252 Mont. 258, 261-62, 828 P.2d 388, 391 (1992) (judicial modification of maintenance precluded by language in the agreement that specifically prevented a court from modifying the agreement); *In re Marriage of Pearson*, 1998 MT 236, ¶ 34, 291 Mont. 101, 965 P.2d 268 (general non-modification clause sufficient to preclude the court from modifying maintenance).

¶12     *Bolstad* cited approvingly *In re Marriage of Thompson*, 640 P.2d 279 (Colo. App. 1982).  *Thompson* reasoned that when parties negotiate an agreement, one side may agree to pay greater maintenance in return for a larger share of property, and thus they should be free to preclude modification of maintenance, explaining:

> Indeed, the waiver of the right to seek modification in and of itself could well be the consideration for a concession in the amount or duration of maintenance, or in the property received by a party.  Thus, to permit reconsideration of the amount of maintenance contracted for, without also reopening the property division, would be inequitable.

*Thompson*, 640 P.2d at 280.  This Court has likewise held that when maintenance is accepted in exchange for relinquishing rights in other property, the maintenance obligation is not subject to modification for changed circumstances, and is instead viewed as part of the total property disposition:

> [I]f support provisions have been made an inseverable part of the Agreement between husband and wife to divide their property, and the court in the [dissolution] action approves the agreement, the provisions of such agreement cannot thereafter be modified without the consent of both of the contracting parties.

*In re Marriage of Robertson*, 237 Mont. 406, 410, 773 P.2d 1213, 1216 (1989) (citing *Washington v. Washington*, 162 Mont. 349, 356, 512 P.2d 1300, 1304 (1973)). In *Robertson*, the husband sought modification of the maintenance he agreed to pay in a marital property settlement agreement, arguing it was unconscionable. *Robertson*, 237 Mont. at 409, 773 P.2d at 1215. Under the terms of the *Robertson* agreement, the wife had relinquished claims against the husband's retirement, savings, and profit-sharing accounts, accepting maintenance in lieu of her share of that property. *Robertson*, 237 Mont. at 410, 773 P.2d at 1216. We thus held that the wife's maintenance was an inseverable part of the property settlement arrangements, and that the maintenance obligation was undertaken by the husband in exchange for the wife's forbearance of certain property in the marital estate. *Robertson*, 237 Mont. at 410, 773 P.2d at 1216.

¶13    We conclude that such is the case here. The Agreement provided that Melinda would receive distributions from the business while the parties were legally separated, and would receive no maintenance. However, upon dissolution, Melinda would relinquish her interest in the business and would receive maintenance payments. Consistent with the Agreement, Melinda's uncontested testimony confirmed that she agreed to give up her interest in the business only because she was assured she would receive maintenance payments. While denominated as maintenance, these payments were, in effect, a structured purchase of Melinda's share of the business. As Melinda argues, "Dan received extra property in the marital settlement Agreement in exchange for his non-modifiable promise to pay maintenance to Melinda for 3 ½ years." The record and our holding in *Robertson*

8

establish that the maintenance provision is an inseverable part of the property distribution provided in the Agreement, and cannot be separately modified by a court upon Daniel's motion.

¶14    Daniel also argues that it would be unconscionable for him to fulfil the maintenance provision, given his change in circumstances.  We acknowledge that the present situation makes this a harsh result for Daniel, but under the Agreement, he assumed both the risk of business failure as well as the possibility of business success if the oil economy continued to boom.  Upon dissolution, Melinda gave up the chance at business success in exchange for certain maintenance payments.  Further, the parties' decision to place the risk of business failure and the possibility of business success on Daniel, who would be acting as the sole owner and sole employee of the business, and responsible for its operation, was not unreasonable.  Therefore, we conclude that enforcement of the parties' agreement is not unconscionable.

¶15    Affirmed.[2]

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

---

[2] Having affirmed on these grounds, we need not reach the issue of whether the non-modification language of the subject Agreement is merely part of an integration clause, or if it precludes all judicial modification of the Agreement.