Justice Jim Rice delivered the Opinion of the Court.
***387 ¶ 1 Genet McCann (Genet) appeals from the District Court's entry of judgment as a matter of law in favor of the Defendants, including individuals and corporate entities, at the close of her case-in-chief in the bench trial held on her claims. We affirm and remand for a determination of attorney fees, addressing the following issues:
1. Did the District Court err by granting the motion for judgment in favor of the McCann and corporate Defendants?
2. Did the District Court err by granting the motion for judgment in favor of Defendant Douglas Wold?
3. Did the District Court err in granting Wold attorney fees?
4. Was Genet denied a fair trial?
5. Should Genet be declared a vexatious litigant?
*686 FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Paul McCann, Sr. (Paul Sr.) passed away in 2013, and his estate included considerable assets, including ownership interests in a number of corporations. After Paul Sr.'s death, a guardianship and conservatorship of his wife, A.M.M., and her interests were established due to her diminished capacity. Paul Sr. and A.M.M. have eight adult children, including five who were involved in related legal proceedings: Thomas McCann, Paul McCann Jr. (Paul Jr.), Genet, Timothy McCann, and Sheila McCann (Sheila).
¶ 3 The District Court appointed Paul Jr. and attorney Douglas Wold to serve as co-conservators of A.M.M.'s estate. Genet, either personally, or as counsel for Timothy, has been involved in unsuccessful litigation challenging the guardianship and conservatorship, including three appeals to this Court. In re Guardianship & Conservatorship of A.M.M. , 2015 MT 250, 380 Mont. 451, 356 P.3d 474 ( In re A.M.M. I ); In re Guardianship & Conservatorship of A.M.M. , 2016 MT 213, 384 Mont. 413, 380 P.3d 736 ( In re A.M.M. II ); and In re Guardianship & Conservatorship of A.M.M. , No. DA 16-0729, 2017 MT 227N, 389 Mont. 544, 2017 WL 4004410, 2017 Mont. LEXIS 566 ( In re A.M.M. III ). Genet was licensed to practice law ***388 in Montana, but since the trial in this matter, has been disbarred due to professional misconduct in the guardianship proceedings. In re McCann, 2018 MT 140, 391 Mont. 443, 421 P.3d 265 ( In re McCann I ); In re McCann , No. PR 16-0635, Or. (Mont. June 6, 2018) (In re McCann II ). Genet has attempted to challenge her disbarment several times in U.S. District Court, so far unsuccessfully. In re McCann , No. CV 18-02-H-SEH (D. Mont. Jan. 11, 2018) (In re McCann III ), mandamus denied , No. 18-71154, 2018 U.S. App. Lexis 10532 (9th Cir. Apr. 25, 2018); In re McCann , No. CV 18-03-H-SEH (D. Mont. Jan. 11, 2018) (In re McCann IV ); McCann v. Supreme Court of Montana , No. CV 18-42-H-SEH (D. Mont. June 11, 2018) (McCann v. Supreme Court I ); McCann v. Supreme Court of Montana , No. CV 18-57-H-SEH (D. Mont. June 11, 2018) (McCann v. Supreme Court II ).
¶ 4 In September 2014, Genet, Thomas, and Timothy brought this action against the named corporate Defendants, which are affiliated with the estate; against Sheila and Paul Jr., individually and in their role as directors or officers of the corporate Defendants; and against Paul Jr. and Wold, individually and in their capacity as co-conservators of the estate. Subsequently, Thomas and Timothy withdrew and settled, respectively. Although naming Wold, Genet did not serve him until January 2017, over two years after she filed the complaint and seventeen days before trial. Wold nonetheless appeared ready to defend.
¶ 5 On the scheduled day for trial, Genet arrived several hours late. The District Court introductorily noted that Genet's claims were "not entirely clear," but understood them to constitute a derivative action seeking forced dissolution of the corporations based upon allegations of corporate oppression under § 35-1-938(2)(b), MCA. Genet proceeded to offer evidence in support of her case, which focused primarily on allegations of corporate records mismanagement. Genet called several witnesses, including court-appointed auditor Natalya Abdrasilova, CPA, who testified that she found missing or incomplete stock records, and court-appointed signature analyst Brent Lund, who identified possible forgeries on several stock certificates. Genet also offered testimony, including by a priest, who testified about the wishes of A.M.M., an issue that had previously been litigated in the guardianship and conservatorship proceedings.
¶ 6 During cross-examination of these witnesses, the defense attempted to demonstrate that any failure to properly maintain records had occurred long ago, and that the Defendants, particularly Paul Jr. and Wold, had worked diligently to correct and bring current ***389 the corporate shareholder list and financial records. Testimony indicated that the legal standing of the corporations had been neglected or mismanaged in Paul Sr.'s later years, but this had substantially improved due to the efforts of Paul Jr. and Wold. The District Court, Hon. James Manley presiding, had approved annual conservatorship accountings and granted permission *687 for Wold to serve as counsel to resolve legal issues related to the corporations, including wage claims, record requests, an issue with the State Auditor, and unpaid taxes. The original twenty corporations had been structurally reorganized and reduced to eleven corporate entities. Numerous board of director and shareholding meetings had been conducted and, for the first time in a long time, the corporations paid stockholder dividends, which totaled four million dollars during 2016. The reorganization included a process of gifting shares from one of the corporations to the heirs of the estate, including Genet.
¶ 7 At the close of Genet's case-in-chief, the McCann and corporate Defendants moved for judgment as a matter of law, arguing Genet had failed to prove her oppression claim. Specifically, they argued they had already corrected past shortcomings in the management of corporate records, and these matters were insufficient to establish oppression. The District Court granted the motion, reasoning that Genet "wholly failed" to establish an oppression claim.
¶ 8 Likewise, the District Court granted Wold's motion for judgment as a matter of law, concluding an oppression claim could not be maintained against Wold because he was not a director and that the only control he had asserted over the corporations was in his role as a co-conservator of A.M.M.'s estate-an issue Genet was collaterally estopped from relitigating in this proceeding. Further, the District Court held Genet had presented no evidence that Wold had engaged in any false reporting or other misconduct, stating Wold's actions "both as co-conservator and as legal counsel were of high quality and in conformance with his ethical and fiduciary duties...."
¶ 9 Following trial, the District Court granted Wold attorney fees pursuant to the equity exception to the American Rule, reasoning that "since there is no basis for the claims against Mr. Wold, [Genet] never should have named him as a party and had no reason to sue him.... Such an award is necessary to make Mr. Wold whole and is supported by justice, equity, and good conscience." Alternatively, the District Court held that Wold was entitled to fees under § 35-1-547(2), MCA, to the extent the case was a derivative action, acknowledging again that Genet's claims against Wold were not entirely clear. The District Court granted Wold both his pro se fees for preparing to defend the case, ***390 attorney fees for counsel he hired to defend him at trial following service of process, and costs. In total, the District Court awarded Wold $56,055.50 in fees and costs.
¶ 10 Genet appealed the District Court's entry of judgment against her claims and the imposition of attorney fees and costs. The McCann and corporate Defendants filed a combined response brief on appeal, and Wold filed a separate response brief. All of the Defendants requested, in their briefing, that Genet be declared a vexatious litigant by this Court.
STANDARD OF REVIEW
¶ 11 The parties dispute the proper standard of review of a judgment entered as a matter of law during a bench trial. However, a judgment as a matter of law, provided for by M. R. Civ. P. 50(a), is only available in jury trials. See M. R. Civ. P. 50(a)(1) ("If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may ... grant a motion for judgment as a matter of law") (emphasis added).
¶ 12 In a non-jury trial, the district court may enter a judgment on partial findings, pursuant to M. R. Civ. P. 52(c), when the party pursing a claim has been fully heard and failed to prove the elements of the claim. See 9 James WM. Moore, Moore's Federal Practice: Civil § 52.50 (Matthew Bender 3d ed. 2018). M. R. Civ. P. 52(c), identical to Fed. R. Civ. P. 52(c), provides:
Judgment on Partial Finding. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only *688 with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).
The required findings and conclusions "may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." M. R. Evid. 52(a)(1). When evaluating a motion for judgment on partial findings, the district court "must evaluate and weigh all the evidence, make determinations regarding credibility, and resolve the case on the basis of the preponderance of the evidence." Moore, supra at § 52.51; see also Ritchie v. United States , 451 F.3d 1019, 1022-23 (9th Cir. 2006). Such ***391 a determination differs from a judgment as a matter of law in a jury trial because it does not require drawing any inferences in favor of the nonmoving party. Moore, supra at § 52.51; see also Ritchie , 451 F.3d at 1022-23. A judgment on partial findings can be entered even when a prima facie case is established, if the case has been impeached in some way. Moore, supra at § 52.51; see also Martinez v. United States Sugar Corp. , 880 F.Supp. 773, 775 (M.D. Fla. 1995). These distinctions arise because, in a jury trial, the jury is the trier of fact, while in a bench trial, the court is the trier of fact and "may make findings in accordance with its own view of the evidence," without regard to what a reasonable jury could find. Ritchie , 451 F.3d at 1023 (citing Lytle v. Household Mfg., Inc. , 494 U.S. 545, 554-55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) ). Thus, at the close of plaintiff's case in a bench trial, if the trial court, after weighing all evidence presented, is unpersuaded the plaintiff has proven her case, there is no reason for the defense to present a case, and the court may enter a judgment on partial findings.
¶ 13 "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." M. R. Civ. P. 52(a)(6) ; see also Ketab Corp. v. Mesriani & Assocs., P.C. , No. 15-56753, 734 Fed.Appx. 401, 410 (9th Cir. 2018). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake." In re S.T. , 2008 MT 19, ¶ 8, 341 Mont. 176, 176 P.3d 1054 (citations omitted). We review conclusions of law de novo . Giambra v. Kelsey , 2007 MT 158, ¶ 28, 338 Mont. 19, 162 P.3d 134 (citations omitted).
¶ 14 If legal authority exists to award attorney fees, we review a district court's grant or denial of fees for abuse of discretion. City of Missoula v. Mt. Water Co. , 2018 MT 139, ¶ 9, 391 Mont. 422, 419 P.3d 685 (citations omitted). A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. Mt. Water Co. , ¶ 9 (citations omitted).
DISCUSSION
¶ 15 1. Did the District Court err by granting the motion for judgment in favor of the McCann and corporate Defendants?
¶ 16 At the outset, we note that the District Court granted the ***392 Defendants' motions for judgment as a matter of law, which, as explained above, was a technically improper motion in a bench trial under M. R. Civ. P. 52(c), adopted in 2011. However, when a trial court enters a judgment as a matter of law, which views the evidence in a light most favorable to the non-moving party, instead of a judgment on partial findings, which requires the court to weigh the evidence to determine whether the non-moving party has proven her case, the error is harmless, because this procedural misstep favors the non-moving party by granting her a more deferential assessment of the evidence by the trial court. See Ortloff v. United States , 335 F.3d 652, 660 (7th Cir. 2003). However, on appeal, we will properly apply the rules to review the motion as one for judgment on partial findings.
¶ 17 Genet argues dismissal of her claims against the McCann and corporate Defendants was improper because she presented *689 substantial evidence of oppression, specifically, in the form of corporate record mismanagement. Citing the standards applicable to judgment as a matter of law, Genet argues that viewing the evidence in the light most favorable to her, she established a case for oppression. However, as explained above, judgment on partial findings can be entered even when a prima facie case has been made, Martinez , 880 F.Supp. at 775, and thus, we consider whether the district court's factual determinations are clearly erroneous and its legal conclusions correct. See M. R. Civ. P. 52(c) ; In re S.T. , ¶ 8.
¶ 18 At the close of Genet's case, the District Court found that while there had been record mismanagement in the past, this evidence was insufficient to support an oppression claim against the Defendants, finding:
[Paul Sr.] was a brilliant businessman in the past but a poor bookkeeper. It appears that, for reasons known only to him, not all [corporate] formalities were followed years ago. But, at the end of the day, the bulk of work to try to pull together and organize these corporations fell on [Paul Jr.] and on Doug Wold. They performed their job well. They have hired the best experts available to pull together over 950 shareholders and to try to stabilize the corporations. There are newly drafted and amended bylaws, the taxes have been brought current, they have straightened out the ownership structure, organized the files, put the checking accounts in proper order, and have addressed and paid wage claims. They have made a significant effort to find shareholders. The corporations are holding shareholding meetings. Twenty or more corporations have now been reduced to eleven.
...
***393 This case was brought in 2014. There was one continuation of the trial. Genet McCann was granted ample time to develop her case. She has wholly failed to establish that any shareholder of any of these corporations [was] oppressed.
¶ 19 These findings, including that corporate recordkeeping errors occurred long ago, had been since remedied, and the corporations had been reorganized for the benefit of the shareholders, has substantial evidentiary support in the record. We are not persuaded the District Court misapprehended the effect of the evidence, nor are we left with any conviction that mistakes were made in the findings. A corporation may be dissolved "in a proceeding by a shareholder if it is established that ... the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent...." Section 35-1-938(2)(b), MCA. The District Court's determination that Genet has not established an oppression claim, as no director or other person in control was proven to be acting in an illegal, oppressive, or fraudulent manner, is not in error.
¶ 20 2. Did the District Court err by granting the motion for judgment in favor of Defendant Douglas Wold?
¶ 21 Genet argues the District Court improperly dismissed her claims against Defendant Wold because she presented evidence he exerted control over the corporations and presented an affidavit suggesting Wold engaged in mail fraud, which constituted illegal conduct that could also be used to prove her oppression claim. She further argues Wold's actions as conservator have not been litigated, and therefore the doctrine of collateral estoppel does not prohibit her claims in this proceeding.[1]
¶ 22 Assuming, arguendo, that collateral estoppel did not bar Genet from litigating her oppression claim against Wold, the District Court found no credible evidence had been presented that Wold had engaged in oppression or any other misconduct. On appeal, the only misconduct Genet asserts against Wold is mail fraud. In this regard, the District Court stated in its oral findings that, "You said you're not bringing a fraud claim. If you were, I don't find any evidence of fraud by Mr. Wold." In its written findings, the District Court stated Genet had *690 "failed to present any evidence in support of such claims."
¶ 23 After reviewing the record, we conclude the District Court's ***394 determination that Genet presented no evidence at trial that Wold engaged in fraud is not in error. The affidavit upon which Genet relies was signed and presented to the District Court well after trial, as part of the post-trial attorney fee proceedings. We cannot fault the District Court for not considering an affidavit presented after trial. Thus, the District Court's factual finding was not erroneous, and its conclusion of law was correct.[2]
¶ 24 3. Did the District Court err in granting Wold attorney fees?
¶ 25 Genet argues the District Court erred by awarding attorney fees to Wold pursuant to the equity exception to the American Rule. See Foy v. Anderson , 176 Mont. 507, 511-12, 580 P.2d 114, 117 (1978). The Foy exception is narrowly drawn and "is applicable only where the action into which the prevailing party has been forced is utterly without merit or frivolous, and only in cases with particularly limited facts." Erker v. Kester , 1999 MT 231, ¶ 44, 296 Mont. 123, 988 P.2d 1221 (internal quotations and citations omitted). We have upheld an award of fees when a suit is brought personally against a defendant for acts undertaken as a duly appointed officer of the court acting pursuant to a court order, when the suit was without merit. Holmstrom Land Co. v. Hunter , 182 Mont. 43, 48, 595 P.2d 360, 363 (1979).
¶ 26 In granting fees, the District Court found Genet had presented no facts that would merit bringing claims against Wold. Later, when discussing the reasonableness of the fees, the District Court noted it was
absolutely convinced the granting of attorney's fees is warranted. There was no basis for Plaintiff to bring Wold into this lawsuit. The Court will not reiterate its previous decisions on this matter. However, the Court will simply and unequivocally state Wold never should have been sued.
Given these findings and a review of the trial record, we conclude the District Court did not err by awarding fees to Wold. This case constitutes a rare instance that justifies invocation of the Foy exception to award fees. During the pre-trial proceedings, Genet's claims were unclear, and at trial were demonstrated to be "utterly without merit."
***395 As in Holmstrom , Wold had to personally defend himself for actions taken while acting as a court-appointed officer.
¶ 27 Genet argues it was duplicative for the District Court to award Wold his pro se fees, along with fees he incurred for defense counsel, and that it was unreasonable for Wold to hire two attorneys in his defense. The District Court held Wold could be awarded fees under Winer v. Jonal Corp. , 169 Mont. 247, 251, 545 P.2d 1094, 1096 (1976), where we held an attorney who represented himself could recover fees, and reasoned that Wold's pro se fees were reasonable because, for over two years, Wold acted in his own defense as he knew the suit was pending and progressing to trial, and it was reasonable to prepare a possible defense should he be brought into the action. Then, after he was served, Wold was able to proceed to trial without delay with the assistance of hired counsel. Although commenting that the hourly rate charged by Wold was high for Montana, the District Court concluded the fees were nonetheless reasonable given Wold's "experience, competence, reputation, and expertise," and that the fees for Wold's trial attorneys were likewise reasonable, noting the complicated background of this case and the work necessary to prepare for trial. Genet has not demonstrated that the District Court erred in determining fees were supported by legal authority, that the court abused its discretion in awarding pro se fees to Wold and fees for trial counsel, or that there was unreasonable duplication in the efforts of Wold's attorneys, particularly *691 given the complexity of the case and the magnitude of the allegations Genet made against Wold, including fraud and forgery.
¶ 28 Genet also argues Wold is barred from fees under the equitable doctrine of laches. Laches "denies relief to a claimant who has unreasonably delayed or been negligent in asserting a claim, when the delay or negligence has prejudiced the party against whom relief is sought." Algee v. Hren , 2016 MT 166, ¶ 8, 384 Mont. 93, 375 P.3d 386 (citations omitted). Genet argues that Wold "sat on his rights" because, despite knowing the case had been filed in 2014, he did not move to dismiss it until the trial in 2017. Given that Genet did not serve Wold until seventeen days before trial, and thus Wold was not a party with standing to seek dismissal, we find this argument wholly unavailing.
¶ 29 We conclude Genet's appellate arguments are without merit, and thus award Wold his fees for defending this appeal pursuant to the Foy exception, and we remand for a determination of those fees. In calculating the final fee award, we direct the District Court to remove any fees awarded for collection of fees. We have held that "[w]hen attorney fees are awarded in equity, we allow fees-for-fees in the rare ***396 case that exceptional circumstances warrant it." Swapinski v. Lincoln Cty. , 2015 MT 275, ¶ 21, 381 Mont. 138, 357 P.3d 329 (citations omitted). Because the District Court did not make any finding that this is such an "exceptional" circumstance, "fees-for-fees" are not warranted.[3]
¶ 30 4. Was Genet denied a fair trial?
¶ 31 Genet briefly raises a number of other issues. She contends she was denied a fair trial because the Defendants committed fraud and forgery of documents in the litigation. However, as explained above, Genet failed to prove this assertion at trial.
¶ 32 Her second assertion is of discovery misconduct. She alleges she was "stonewalled" in her attempts to discover evidence, in particular that the Defendants withheld stock certificates. The District Court determined that Genet's discovery requests sought "nearly all the corporate documents" dating back "decades," and ruled the requests were unduly burdensome and expensive. Finding Genet had been provided the last five years of corporate financial statements, tax records, and reports from court-appointed auditors, the District Court granted the defense motion for a protective order. Genet has not demonstrated how the defense, following entry of the protective order, committed misconduct.
¶ 33 Genet argues the District Court erred by granting the protective order. She asserts a due process violation, but provides no legal analysis about how her rights were violated or what remedy would apply, and thus, we decline to address her argument. See Botz v. Bridger Canyon Planning & Zoning Comm'n , 2012 MT 262, ¶ 46, 367 Mont. 47, 289 P.3d 180. She asserts, with no citations to the record, that the District Court abused its discretion by granting a motion to compel against her, as there was no good faith conferral. See M. R. Civ. P. 37(a)(1). Again, given that Genet has provided no authority or support in the record, we decline to address this issue. See ***397 Johnston , ¶ 30.
¶ 34 Third, Genet alleges it was misconduct for the Defendants to report her conduct to the Office of Disciplinary Counsel (ODC). Opposing counsel was a mandatory reporter of misconduct. See M. R. Pro. Cond. 8.3(a). Genet provides no support for her assertion that unfounded complaints were made at ODC with the intention of prejudicing her in this litigation. Further, Genet presents no evidence that the ODC matter was inappropriately made a part of this proceeding. The *692 District Court did not make any findings regarding the ODC matters and the ODC matters were not included in the trial record.
¶ 35 Fourth, Genet argues the District Court improperly made a "heavy-handed threat" when it suggested she desist from her fraud claims. Genet moved the District Court for an order of contempt and sanctions against the Defendants, alleging fraud. The District Court denied the motion, reasoning:
Once again, in her briefs Genet puts forth a number of unfounded accusations and allegations and seemingly only has her word as support for such. This Court has seen no evidence of mail fraud. The allegations of fraudulent stock transfers are merely allegations and have been a recurring theme through Genet's filings.... The Court further cautions Genet from continuing her practice of baseless accusations of those that are a party to this litigation, and especially of those who are not a party. Accusing individuals who are not a party to this litigation of various acts and crimes, such as mail fraud, not only waste the Court's and opposing counsel's time, but also weaken Genet's argument in the eye of this Court.
We disagree that this was a "heavy-handed threat," and cannot conclude the District Court erred by warning a party to cease making baseless accusations that were wasting judicial resources.
¶ 36 Fifth, Genet argues it was error for the District Court not to grant her motion to continue the trial, and that it was error to limit her case-in-chief to five hours without prior notice. Genet provides no legal argument or analysis on these issues. Genet showed up for trial two hours late, and the record reflects the District Court patiently waited for her and then permitted her to proceed with her case. We cannot conclude the District Court abused its discretion in the administration ***398 of the trial.[4]
¶ 37 5. Should Genet McCann be declared a vexatious litigant?
¶ 38 This Court may sanction a litigant, including the imposition of a pre-filing order, for vexatious litigation conduct. Stokes v. First Am. Title Co. of Mont., Inc. , 2017 MT 275, ¶ 4, 389 Mont. 245, 406 P.3d 439. Such sanctions may be imposed based on a request included in a brief. M. R. App. P. 19(5). We utilize a five-factor test to determine whether a pre-filing order is justified: (1) the litigant's history of litigation and, in particular, whether it has entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation; e.g., whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and court personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Stokes , ¶ 4 (citing Motta v. Granite Cty. Comm'rs , 2013 MT 172, ¶ 20, 370 Mont. 469, 304 P.3d 720 ).
¶ 39 Here, the Appellees request we declare Genet to be a vexatious litigant and impose a pre-filing order. Genet argues the request should be denied because no findings in this regard were entered by the District Court. However, we held that we could undertake initial consideration of such a matter based upon the motion made in this court, when there was sufficient evidence in the record to impose the order. Stokes , ¶ 4 n.2. In her reply brief, Genet requests leave to respond to the request to declare her a vexatious litigant. Genet had ample opportunity to respond to the request in her reply brief, and did so to some extent. She argues, generally, that her legal position had merit and was not frivolous. However, we consider not just the merits of a single position in a suit, but Genet's litigation history as a whole. Stokes , ¶ 4.
*693 ¶ 40 Under the first factor, we find Genet's history of litigation to consistently entail vexatious, harassing, and duplicative lawsuits and fillings. In this case, Genet has repeatedly raised unfounded and serious allegations, including mail fraud, a federal crime, against Defendants and others. Despite warnings from the District Court to ***399 cease making allegations that have no factual basis, Genet continued to press unsupported claims against the Defendants throughout the case below, and on appeal. The District Court found many of Genet's motions to be an "attempt to relitigate" matters that had already been decided. In her appellate briefing, she proffers unfounded accusations against the parties and their attorneys, formatted in capitalized letters, such as "EMBEZZLEING," "ILLEGAL POWER MANEUVERING," and "ILLEGAL CRIMINAL CONDUCT." Genet's history exhibits duplicative litigation, including three appeals in the guardianship and conservatorship case, In re A.M.M. I, II , and III , and repeated litigation of her disbarment in federal court, In re McCann III and IV , and twice suing this Court, McCann v. Supreme Court I and II . The Commission on Practice, when recommending her disbarment, entered extensive findings about Genet's actions, including that she:
is truly the poster child of not just a vexatious litigant, but a vexatious lawyer, unwilling or unable to see the outrageous nature of her conduct, both in the district court and in these disciplinary proceedings. Ms. McCann had numerous opportunities to correct or at least mitigate her conduct. In each instance, she took the approach of escalating the dispute by engaging in unprofessional name-calling, accusatory statements of bias, and relying on a hodgepodge of groundless claims and unsupportable theories that failed to articulate a coherent legal position.
¶ 41 Under the second factor, we determine Genet has not had an objectively good faith expectation of prevailing. For instance, Genet's briefing in this appeal generally did not sufficiently support her arguments with citations to the record, citations to authority, and sufficient legal analysis and argument. At trial in this underlying case, the District Court found Genet failed to prove any claims and dismissed her case without hearing from the Defendants. Genet's suits in federal court, which attempt to relitigate her disbarment, have been immediately dismissed for lack of jurisdiction, yet she continued to file them. See In re McCann III and IV ; McCann v. Supreme Court I and II . In In re A.M.M. I , Genet, acting as her brother's counsel, raised several potentially merited issues on appeal, though we ultimately affirmed the District Court. However, she also raised several wholly unsupported issues, including allegations of misconduct by attorneys involved in the case, which were dismissed as improperly raised, untimely, and even improperly served. In In re A.M.M. II , Genet, representing herself and her brother, was found to have attempted to improperly influence her disabled mother, was enjoined from visiting ***400 her without others present, and filed "offensive" pleadings with allegations of criminal misconduct against others, including Wold and the district court judge, which had no factual or legal basis. Genet was found to have a "pattern of frivolous, incompetent, offensive and unfounded allegations made against numerous attorneys and others in past pleadings." We affirmed the imposition of Rule 11 sanctions. In In Re A.M.M. III , we found Genet "harassed, intimidated and interfered with" the in-home care services hired to care for A.M.M., and in a memorandum opinion, we affirmed the quashing of a subpoena issued by Genet, and affirmed sanctions against her.
¶ 42 The third factor, whether Genet was represented by counsel, makes her litigation conduct even less excusable, because she herself was an attorney licensed to practice law in Montana, and should have known to not repeatedly initiate unsupported claims. Genet has since been disbarred for failing to follow Montana's Rules of Professional Conduct.
¶ 43 Under the fourth factor, we find Genet's litigation has caused needless expense to other parties or has posed an unnecessary burden on the courts and court personnel. Genet repeatedly relitigates the same issues, which she repeatedly fails to prove.
*694 ¶ 44 Under the fifth factor, we find other sanctions have not adequately protected the courts and other parties. Genet has been sanctioned and ordered to pay attorney fees, see, e.g. , In re A.M.M. II and III , and has been disbarred for professional misconduct, In re McCann I and II , but continues to make harassing and unsupported allegations in Montana courts.
¶ 45 Consequently, we grant the Appellees' request to declare Genet McCann a vexatious litigant and impose a pre-filing order. Before Genet McCann can file any pleading in a Montana district court or the Montana Supreme Court, she is required to obtain pre-filing approval from the court in which she seeks to file. The court may reject any filing upon a determination that the claims asserted or allegations made are harassing, frivolous, or contain unsupported allegations.
¶ 46 Affirmed and remanded.
We concur:
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.

Genet again argues the standard for judgment as a matter of law on this issue. As before, we review under the standard for judgment on partial findings. See M. R. Civ. P. 52(c) ; In re S.T. , ¶ 8.

Genet also asserts that, "The two written Judgments are void on its [sic] face since the Defendant unilateral [sic] changed the oral findings made at the close of trial." We find the oral findings and written findings to be consistent, and that there is no evidence the Defendants acted unilaterally to alter the written judgments signed and entered by the District Court. In any event, the District Court made both oral and written findings that there was no evidence Wold engaged in fraud.

Having determined that fees were appropriate under the Foy exception, we do not address the District Court's alternative basis for fees under § 35-1-547(2), MCA. Also, Genet offers other brief arguments regarding fees, all of which are insufficiently supported. This Court will not conduct legal research on behalf of a party, speculate at a party's precise position, or develop legal analysis that may lend support to that position. Johnston v. Palmer , 2007 MT 99, ¶ 30, 337 Mont. 101, 158 P.3d 998 (collecting cases). Genet asserts it was error to strike her mail fraud expert from the attorney fees hearing, but presents no supporting argument or authority. Genet asserts the fee award violated her First Amendment right to litigation speech, but provides no legal analysis about how her right was violated, or what her remedy would be.

Genet explained her tardiness as being unexpectedly stuck in traffic, though we note she has a history of being late or not showing to proceedings. See In re McCann I and II . We note the record indicates the District Court, despite Genet making many duplicative and unsupported arguments, was patient with Genet throughout the proceedings and understanding of her personal interest in the case.