FILED

09/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0611

DA 20-0611

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 252N

TERRY WALLACE,

      Plaintiff and Appellant,

  v.

LAW OFFICES OF BRUCE M. SPENCER, PLLC,
LPH, INC., a Montana Corporation, GEISZLER
STEELE, PC, and John Does 1-5,

      Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. ADV 2020-245
                   Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Terry A. Wallace, Self-represented, Missoula, Montana

        For Appellees:

        Mikel L. Moore, Moore, Cockrell, Goicoechea & Johnson, P.C., Kalispell,
        Montana (for Law Office of Bruce M. Spencer, PLLC)

        Jon A. Wilson, Brown Law Firm, P.C., Billings, Montana (for LPH, Inc.)

        David J. Steele, II, Timothy D. Geiszler, Geiszler Steele, PC, Missoula,
        Montana (for Geiszler Steele, PC)

                 Submitted on Briefs:  August 11, 2021

                        Decided:  September 28, 2021

Filed:

                    _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 Terry Wallace (Wallace) appeals the order entered by the First Judicial District Court, granting summary judgment on Wallace's claims in favor of Law Offices of Bruce M. Spencer, PLLC, LPH, Inc., and Geiszler Steele, PC (Appellees), and granting Appellees' joint motion to declare Wallace a vexatious litigant. We affirm.

¶3 Discovery Dental Group (DDG) contracted with LPH, Inc., a debt collection agency, to collect an unpaid $1,112.13 bill from Karrie Serrania, who had signed a contract as responsible party for dental services rendered by DDG to Serrania, her then-husband, and her son. Serrania did not pay the debt, and LPH brought action in Justice Court. But after Wallace became Serrania's counsel and filed counterclaims that exceeded the Justice Court's jurisdiction, Serrania initiated suit against DDG and LPH in the District Court. Serrania asserted violations of the Fair Debt Collection Practices Act (FDCPA) and the Montana Consumer Protection Act and sought damages of approximately $650,000. The District Court granted summary judgment to DDG and LPH; and in January 2014, after concluding Serrania and Wallace had violated M. R. Civ. P. 11 by their vexatious actions, ultimately imposed sanctions in the amount of $42,113.32 to be paid to LPH and $32,647.94 to be paid to DDG. The court also sanctioned Wallace an additional $1,000

each to counsel for LPH and DDG for failing to appear at a scheduled hearing and $10,000 for "his blatant lack of candor and his disrespectful conduct toward the Court and the legal process and his egregious abuses of the legal rights of the Defendants." *Serrania v. LPH, Inc.*, 2015 MT 113, ¶ 10, 379 Mont. 17, 347 P.3d 1237 (*Serrania I*). Serrania filed for bankruptcy and discharged her debts. *Serrania I*, ¶ 11. On appeal, we affirmed the summary judgment and determined that the District Court did not abuse its discretion by imposing the $1,000 and $10,000 sanctions. *Serrania I*, ¶¶ 32, 36. After determining Serrania's FDCPA claim "had some grounding in the law—albeit not enough to withstand summary judgment"—i.e., it was not entirely frivolous, *Serrania I*, ¶ 37, we remanded the other sanctions to be recalculated without regard to the filing of the FDCPA claim. *Serrania I*, ¶ 38. On remand, the District Court withdrew the $10,000 sanction against Wallace and ordered him to pay LPH $30,847.68 for fees unrelated to the FDCPA claim, a decision which we affirmed on appeal. *Serrania v. LPH, Inc.*, No. DA 17-0221, 2018 MT 3N, ¶¶ 4, 6, 2018 Mont. LEXIS 2. (*Serrania II*).

¶4 On October 30, 2018, following a complaint filed by the Office of Disciplinary Counsel and a hearing before the Commission on Practice (COP), this Court issued an Order of Discipline, affirming the COP's Findings of Fact and Conclusions of Law, and adopting its Recommendation to suspend Wallace from the practice of law for seven months, with readmittance subject to reapplication. *See In the Matter of Terry A. Wallace*, PR 17-0245, Order of Discipline (Mont. Oct. 30, 2018). We noted therein that "[t]he records related to this proceeding are replete with incidents of professional misconduct" by Wallace.

¶5     In November 2018, Wallace filed a complaint in the United States District Court for the District of Montana, naming as defendants the State of Montana, District Judges Ed McLean and Leslie Halligan, who presided over the respective *Serrania I* and *II* trial proceedings, and the Justices of this Court. *See Wallace v. Montana*, No. CV-18-103 RJB, 2019 LEXIS 60606 (D. Mont. Apr. 8, 2019). In April 2019, Wallace's case was dismissed for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Wallace*, 2019 LEXIS 60606, at *15.[1]

¶6     Following the entry of judgment against Wallace for the sanctions we affirmed in *Serrania II*, LPH retained attorney Bruce Spencer to collect it. Spencer obtained issuance of a writ of execution, but was unable to locate Wallace or his assets, despite searching credit records, postal records, and Motor Vehicle Division records. The address given by Wallace to the U.S. Post Office belonged to the First Presbyterian Church of Missoula. Spencer had a subpoena issued for Wallace, which was returned after the process server was unable to locate him. Ultimately, Spencer served two *subpoena duces tecum* upon Dr. Sam Wallace, son of Wallace, seeking to depose Dr. Wallace regarding the location of his father and his father's assets. The first deposition was cancelled after Wallace communicated to Spencer that the subpoena lacked language required under M. R. Civ. P. 45. Spencer corrected the language and served a second subpoena for a deposition, which

---

[1] During the pendency of this matter, Wallace moved to disqualify this Court *en banc*, citing this federal litigation and many other grounds, including "widespread unethical conduct by this court." Appellant's Consolidated Motions, 2, May 24, 2021, DA 20-0611. We denied the motion in what Wallace describes as "a snarky little order." Appellant's Reply and Oral Arg. Demand, 2, July 7, 2021, DA 20-0611.

4

had to be cancelled by Spencer because of an unrelated emergency. The first deposition had been designated to occur at a hotel in Missoula, while the second was scheduled for a conference room at the Missoula office of Geiszler Steele, PC.[2] At this time, Spencer advised Wallace and his son that if Wallace would accept service of the writ, the need to subpoena Dr. Wallace could be avoided. Wallace declined and, after the deposition subpoenas were again served on his son, Wallace filed this lawsuit, alleging claims against LPH, Spencer, and Geiszler Steele, PC for abuse of process, intentional infliction of emotional distress (IIED), and civil conspiracy.

¶7 Appellees filed motions for summary judgment and also filed a joint motion requesting an order declaring Wallace to be a vexatious litigant, requiring anything he sought to file be pre-approved by the District Court. In an October 20, 2020 Order, discussed further below, the District Court granted Appellees' motions for summary judgment and their joint motion declaring Wallace to be a vexatious litigant. Wallace appeals, challenging the entry of summary judgment on his claims and the entry of the Order declaring him to be a vexatious litigant.

¶8 We review a district court's grant of summary judgment de novo, applying the same M. R. Civ. P. 56 criteria as applied by the lower court. *Serrania I*, ¶ 12. Summary judgment is appropriate if the movant successfully carries the burden to establish that there is no

---

[2] David J. Steele II had previously represented LPH through the completion of the *Serrania* proceedings, but as the District Court noted, "[a]llowing Spencer to use a Geiszler Steele, PC conference room for a deposition appears to be the only connection Geiszler Steele, PC has to the events of this case."

genuine issue of material fact and that the movant is entitled to judgment as a matter of law as confirmed by a review of "the pleadings, the discovery and disclosure materials on file, and any affidavits[.]" M. R. Civ. P. 56(c)(3).  If the movant satisfies the burden, the burden shifts to the nonmovant, who is tasked with setting forth particularized facts—not merely "rely[ing] upon their pleadings, nor upon speculative, fanciful, or conclusory statements"—in opposition of summary judgment.  *Thomas v. Hale*, 246 Mont. 64, 67, 802 P.2d 1255, 1257 (1990) (citation omitted).

¶9      "Essential to proof of [the claim of] abuse of process is (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Hughes v. Lynch*, 2007 MT 177, ¶ 21, 338 Mont. 214, 164 P.3d 913 (quoting *Brault v. Smith*, 209 Mont. 21, 28, 679 P.2d 236, 240 (1984)) (internal quotation omitted). "'Some definite act or threat not authorized by the process, or aimed at an object not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Hughes*, ¶ 21 (quoting Prosser, *The Law of Torts* § 121, at 857 (4th ed., West 1971)).  Wallace contends that summary judgment is improper because there exist genuine issues of material fact regarding whether Spencer's efforts to collect the judgment were undertaken with an "ulterior motive" and "not in the regular conduct of" proceedings in aid of execution of the judgment, arguing "[w]hat we have here is Spencer and Steele, who, because of their over the top animosity towards Wallace, are doing everything they can to get their *ad hominem* claims about Wallace before the court, and

6

who, without a writ of execution, tried to illegally subpoena Wallace's son in direct violations of the law."

¶10 From the undisputed facts, the District Court determined that the Appellees "did not abuse process" when they "lawfully sought to depose [Wallace's son] regarding his father's whereabouts and assets," noting this procedure was authorized under a plain reading of M. R. Civ. P. 69. The court noted that none of Wallace's accusations rose "to a level beyond mere speculation that Spencer or LPH has done anything beyond carrying out the process of collecting a judgment to its authorized conclusion," or that Appellees "sought a 'collateral advantage' by filing the subpoenas," or "sought to threaten or coerce Wallace into any act by filing the subpoenas." The District Court reasoned that Spencer's "simple (and accurate) statement that Wallace's consenting to service would obviate the need to depose [his son]" could not be inferred to be coercion.

¶11 It is clear from Wallace's briefs that it is not abuse of process to which Wallace objects, but simply "the process" legally proscribed for executions of judgments. An execution of judgment is a civil proceeding governed both by statute and the Montana Rules of Civil Procedure. *See* § 25-14-101, *et seq*., MCA. Rule 69 provides that, to aid in execution or collection of a judgment, a judgment creditor "may examine *any person*, including the judgment debtor, *in the manner provided in these rules for taking depositions*." M. R. Civ. P. 69 (emphasis added). We note, in answer to another of Wallace's arguments, that these provisions do not limit the place of depositions to a courtroom or before a judge or referee. Section 25-14-105, MCA; *see also* M. R. Civ. P. 30.

7

¶12 Even if Appellees were operating under a personal vendetta against Wallace or with ulterior purposes, there can be no liability absent "[s]ome definite act or threat not authorized by the process, or aimed at an object not legitimate in the use of the process[.]" *Hughes*, ¶ 21. Appellees' personal attitudes toward Wallace are of no consequence here as service of process upon Wallace and his son is not outside of the execution process provided by statute and the Rules. Nor is it consequential here that Spencer may have made the mistake of serving a subpoena after the writ of execution had expired. Such an error could have been lawfully repaired, and, regardless of the truth of this allegation, the notion that Spencer improperly leveraged or coerced Wallace by deposing his son is unsupported speculation. Wallace failed to raise genuine issues of material fact that rose beyond fanciful speculation. "Evidence sufficient to raise a genuine issue of material fact 'must be in proper form and conclusions of law will not suffice; the proffered evidence must be material and of a substantial nature, not fanciful, frivolous, gauzy or merely suspicious.'" *Moore v. Goran, LLC*, 2017 MT 208, ¶ 24, 388 Mont. 340, 400 P.3d 729 (internal citation omitted).

¶13 The District Court further reasoned that, "because Wallace's claims for [IIED], civil conspiracy, and punitive damages are premised on the abuse of process claims, those claims also fail," noting "it is axiomatic that civil conspiracy requires an underlying bad act." *See, e.g.*, *Hughes v. Pullman*, 2001 MT 216, ¶ 26, 306 Mont. 420, 36 P.3d 339. Regarding IIED, an "actor is never liable [where] he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Judd v. Burlington Northern & Santa Fe Ry.*, 2008

8

MT 181, ¶ 30, 343 Mont. 416, 186 P.3d 214 (citation and quotation omitted). Spencer was exercising his client's rights as judgment collector and acting within the applicable statutes. Therefore, as a matter of law, there can be no cause of action for civil conspiracy or IIED.

¶14 Finally, Wallace argues for reversal on the ground that the District Court denied his request for a hearing, which he contends violated his right to due process. Wallace correctly cites the general rule that, upon request, a party may have a summary judgment hearing. M. R. Civ. P. 56(c)(2)(A). However, there are limits to this general rule, as applied to these circumstances. *See Richards v. County of Missoula*, 2009 MT 453, ¶ 17, 354 Mont. 334, 223 P.3d 878 ("[A] hearing may not be necessary in 'extraordinary circumstances' before an order granting summary judgment.") Pursuant to § 3-1-111, MCA, Montana courts have the inherent power to take necessary measures to maintain the integrity of the legal process. As the United States Supreme Court has noted:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 1061 (1970); *accord State v. Hartsoe*, 2011 MT 188, ¶ 25, 361 Mont. 305, 258 P.3d 428 (determining that courtroom decorum constituted a "compelling circumstance" in satisfaction of the first prong of the test outlined in *State v. Herrick*, 2004 MT 323, ¶¶ 14-15, 324 Mont. 76, 101 P.3d 755). Wallace has a recorded history of not showing up to hearings, *Serrania I*, ¶ 7, and engaging in unprofessional and inappropriate actions when he does. *See In the Matter of Terry A.*

*Wallace*, PR 17-0245, Order of Discipline (Mont. Oct. 30, 2018) (adopting Commission on Practice's finding that Wallace's "belief – expressed throughout the hearing – that he knows more than other lawyers and judges" was likely to cause Wallace to continue his destructive behavior). Given Wallace's history of disruptive behaviors during litigation, the District Court acted within its statutory and constitutional authority and did not abuse its discretion when it determined to not hold a summary judgment hearing. Wallace had ample opportunities over years of litigation, discussed herein, to present his arguments against the sanctions included in the judgment, including the arguments repeated herein, and has not been denied due process. The District Court correctly entered summary judgment on Wallace's claims in favor of the Appellees.

¶15 Turning to the District Court's vexatious litigant order, our review here will be summary, as we are entering a statewide vexatious litigant Order concurrently with this Opinion. The District Court, citing *McCann v. McCann*, 2018 MT 207, ¶ 38, 392 Mont. 385, 425 P.3d 682, extensively reviewed the record and analyzed the five *McCann* factors[3]

---

[3] The factors cited in *McCann*, ¶ 38 (citing *Stokes v. First Am. Title Co. of Mont., Inc.*, 2017 MT 275, ¶ 4, 389 Mont. 245, 406 P.3d 439 and *Motta v. Granite Cty. Comm'rs*, 2013 MT 172, ¶ 20, 370 Mont. 469, 304 P.3d 720), for consideration of a vexatious litigant order are:

> (1) the litigant's history of litigation and, in particular, whether it has entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation; e.g., whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and court personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

in concluding that Wallace is a vexatious litigant and restricting his access to the courts of the First Judicial District. Specifically, the District Court directed that Wallace:

> is prohibited from filing any complaint, petition, or other pleading of his own creation that purports to initiate a new cause of []action without the express written permission of this Court. In the event Wallace attempts to do so, the Clerk of District Court is directed to present the pleading to this Court for review.

¶16 The District Court noted Wallace's frivolous suits, harassing and abrasive conduct, and inability to recognize his wrongdoing. The court delineated "Wallace's history of vexatious, harassing lawsuits" in support of satisfaction of factor one, and determined factor two was satisfied because Wallace's claims were not objectively "reasonably calculated to succeed." The court cited *McCann*, ¶ 42, for the proposition that Wallace's "egregious conduct should be considered even more egregious" given that it was "perpetrated by an attorney[.]" The court noted Wallace's unprofessional and unbecoming actions, the culmination of which has "burdened other parties, burdened the courts, and have caused needless expense" to the satisfaction of the fourth factor. Finally, noting that Wallace's failure to simply submit to the *Serrania* sanctions is what led to the current litigation, the court determined that lesser sanctions would not adequately protect the courts and other parties.

¶17 We conclude that the District Court properly weighed the relevant factors and did not abuse its discretion in determining that Wallace is a vexatious litigant and sanctioning him with the imposition of a pre-filing order. Given Wallace's response to prior, lesser sanctions, the District Court's decision was appropriately tailored to address Wallace's documented penchant for disrespect toward litigants and tribunals. To the extent that

11

further review is necessary to consider constitutional issues raised by Wallace, this concern is more fully addressed in the Opinion and Order issued in conjunction herewith. *Wallace v. Law Offices of Bruce M. Spencer, PLLC*, 2021 MT __, __ Mont. __, __ P.3d __, 2021 Mont. LEXIS __, DA 20-0611.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19 Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR